† VEAZIE *versus* HOLMES *&* *al. and* ADAMS *and* BENSON,
*Trustees.*

A bill of sale made in good faith, for a valuable consideration, of a certain
quantity of pickets, a portion of which were manufactured, and the remain-
der to be manufactured, with a delivery of those made, and a place fixed for
the delivery of the balance, and a delivery accordingly, vests the title of such
pickets, so set apart, in the vendee, as against the creditors of the vendor.

ON EXCEPTIONS from *Nisi Prius,* APPLETON, J., presiding.

The question in this case was whether the trustees were
chargeable on their disclosure and the evidence furnished.

From their disclosure it appeared that defendants, a few
days before the service of this writ, had agreed to consign
to them a lot of pickets. They were received with a memo-
randum of the amount, signed by defendants, "agents."

After the service of the writ they were informed by one
Wellington Reed, that he owned the pickets, and he showed
them a bill of sale signed by defendants, as follows:—

"Oldtown, Aug. 17, 1853.

"In consideration of supplies advanced and to be advanced
by Wellington Reed, to the firm of Holmes & Estabrook,
picket and lath manufacturers, in the Veazie block, we here-
by agree to sell, and do sell to the said Wellington Reed, all
the spruce and pine pickets that we (may) have on hand, or
may have on hand, to the amount of fifty thousand pickets,
at eight dollars for spruce, and thirteen dollars for pine, per
thousand."

Foss, a witness to the bill of sale, according to his depo-
sition in the case, was present at the time, and saw the de-
livery of the pickets, manufactured for the security of cer-
tain supplies that Reed let them have from time to time.
Those pickets which were not then sawed, were to be deliv-
ered on the bridge at the west end of the new block of
mills, and were afterwards so delivered, and such supplies
were all furnished before the bill of sale. He was the keep-
er of Reed's books, but had no knowledge of any credit of
them upon his books.

The supposed trustees being satisfied that the property belonged to Reed, had, before making their disclosure, paid over to him and by his order, to defendants, the balance in their hands.

The presiding Judge ordered the trustees to be discharged, to which order the plaintiff excepted.

*Britt,* for trustees.

*A. W. Paine,* for plaintiff.

1. The facts show a case of fraud. The bill of sale is in form absolute, and it is not for the parties to show it otherwise. Some of the pickets were manufactured, and some not — two different kinds are designated — no receipt for the amount given, and no account appears to have been kept. If absolute, what were defendants to have for their services? and what was to be done with the payments for the pickets? The appearance of the whole thing is to keep off creditors, or else a secret trust which is regarded as fraudulent. *Coburn* v. *Pickering,* 3 N. H., 415.

2. But if, according to the testimony of Foss, the bill of sale was merely as collateral, then it was absolutely void as to creditors. *Richardson* v. *Kimball,* 28 Maine, 463; *Gorham* v. *Herrick,* 2 Maine, 87; *Whitaker* v. *Sumner,* 20 Pick. 399.

3. If it was a mortgage, it should have been recorded. R. S., c. 125, § 32.

4. The sale, so far as it was intended to include pickets not then manufactured, is entirely void and ineffectual to pass any title. *Pettes* v. *Kellog,* 7 Cush. 456; *Jones* v. *Richardson,* 10 Met. 481; *Turner* v. *Bachelder,* 17 Maine, 257; *Garland* v. *Hilborn,* 23 Maine, 442.

5. There was something more to be done, to determine the quantity or price, and hence the plaintiff's title is incomplete. *Houdlette* v. *Tallman,* 14 Maine, 400; *Stone* v. *Peacock,* 35 Maine, 385.

6. At best, the claim of Reed is but a collateral one, to secure him for supplies advanced and to be advanced. If nothing is due, the claim is satisfied, and the lien discharged.

It is for Reed to prove the indebtedness. Such proof is wanting. If there was any at the time the contract was made, *non constat*, that it was not all paid.

7. The future earnings of a debtor cannot be sold or assigned, so as to defeat a creditor's claims. *Mulhall* v. *Quinn*, 1 Gray, 105; *Hall* v. *Jackson*, 20 Pick. 194; *Carrique* v. *Sidebottom*, 3 Met. 297.

TENNEY, J. — At the time of the service of the writ on Seth E. Benson, the supposed trustee, he had in his hands some pickets, which were sent to him by the principal defendants, "agents," after Aug. 17, 1853. When Adams was served with the writ, he had in his hands money, the avails of other pickets, which were sent to him in the same manner, also after Aug. 17, 1853. And before they had either of them paid the avails, they were notified by Wellington Reed, that all the pickets sent to them after that date were his, under a sale from Holmes & Estabrook. The question is, whether these pickets were the property of Reed when they were received by the consignees, Benson and Adams, or not.

The bill of sale from Holmes & Estabrook, to Reed, of Aug. 17, 1853, by its terms, was a sale of "all the spruce and pine pickets which we have on hand, or which we may have on hand, to the amount of fifty thousand, at $8 for spruce, and $13 for pine, per thousand," in consideration of supplies advanced, and to be advanced, by Wellington Reed.

Foss was present at the time the bargain was made, and witnessed the bill of sale. He testifies that for the security of the supplies which Reed let Holmes & Estabrook have from time to time, delivery was made of the pickets, which were then sawed; and that those which were not sawed, were to be delivered on the bridge at the west end of the new block of mills, and that they were delivered; and that the supplies were received by Holmes & Estabrook before the bill of sale was given.

The written contract, upon a fair construction, was a sale of the pickets then on hand, and of those which were expect-

ed to be manufactured afterwards. It is absolute upon its face, and notwithstanding the witness states that the delivery was made for *security* of supplies, it is manifest from his account of the transaction, and what is shown to have been done by the parties thereto, it was not designed to be the security of a mortgage or a pledge, but what it purports to be upon its face, and that the pickets were delivered under it, as an absolute transfer. It is evident that the property was not to be retained by Reed any longer than was necessary for its conversion into money, which was to be his, and applied in payment of supplies advanced, and to be advanced. It was not a mortgage, and therefore not necessary to be recorded. And its form is not proved to be so inconsistent with the design of the parties, as to present fairly the legal question of its being a fraud upon attaching creditors.

If the contract of sale was *bona fide*, it was valid, although it was an agreement in part for the sale of pickets not then in existence, and from materials which were not owned by Reed. The case is distinguished from those referred to by the plaintiff's counsel upon this point. It appears that Holmes & Estabrook were in the process of making pickets, in a mill used for the purpose, and if the pickets were actually delivered to the vendee afterwards, in pursuance of the contract, and nothing was omitted which was contemplated by the parties to make the sale complete, it may be regarded as legally perfected.

The evidence being, that a place was designated where the pickets, not manufactured at the time the writing was executed, were to be left by one party and taken by the other, and that they were in fact delivered, and nothing indicating that they were not entirely separate from all others, every thing was done, required by law, to make it a binding transaction, if free from fraud.

It is insisted that the change of possession of the property is wanting in the case, it being carried from the place of manufacture by the vendors, to the consignees. This, alone, would not render the attempted sale invalid. It often

happens that the vendor of property, as a part of the very contract of sale, engages to perform certain service connected with the chattels sold, which requires that he should have it in possession; and it is not legally improper that the possession, after it has been taken by the purchaser, should be in the vendor, who may be employed afterwards to remove it, or perform any other act upon it, if this possession is in submission to the title of the vendee.

Whether the contract was *bona fide*, is a question of fact. If it was the design of Holmes & Estabrook to dispose of the property to defraud or delay their creditors, and Reed, knowing that design, aided therein, his claim cannot be upheld. It is proper to consider the situation and business of the parties to that contract. One party were manufacturers of pickets, and had had supplies of the other party, who had the means of making advances thereof, and had done so to them. And as they probably would need more, it was not singular that they should provide for the payment of those supplies, which their future wants would require, as well as for the articles which they had before received, and which were not paid for prior to the bill of sale. Reed would honestly wish to receive the money due for any claim he then had, and to make a contract for other sales, upon receiving satisfactory evidence that he would be safe in so doing.

The transportation of the pickets to the consignees, was caused by Holmes & Estabrook, while they professed to be the owners; and they could probably continue to do it afterwards with as much facility as Reed could procure it to be done, and at no greater expense. It does not appear that Reed was apprised of the indebtedness of Holmes & Estabrook, in such an amount as would expose their property to attachment, or that they wished for any unlawful purpose to dispose of it. In view of all the facts and circumstances, though the suspicions of a creditor after the sale may have been awakened, that there was some sinister design in the

parties to the sale, we are not satisfied that the transfer was a fraud upon creditors' rights.

It is contended, that as Reed had received a considerable amount from the avails of sales of pickets delivered after the bill of sale, it is not shown that he had any claim against Holmes & Estabrook, at the time of the disclosure of the trustees, one of whom paid to Reed personally, and the other on his order, the sums which were in their hands, respectively, at the time of the service of the writ on them. If the payment to Reed was of money belonging to him, no injury can result to any one. If Adams and Benson paid it, when it was held by the attachment, it furnishes no reason for their discharge as trustees. The plaintiff cannot at one and the same time claim to hold the trustees, and invoke the payment made by them to Reed, as a ground for the payment of the same amount to him. *Exceptions overruled,* —

*Trustees discharged.*

APPLETON, J., concurred in the result.